## Case No. 8,196.

### LEE v. LUTHER.

[3 Woodb. & M. 519.] [1]

Circuit Court, D. Rhode Island. Nov. Term, 1847.

GIFTS—INTER VIVOS—GIFT BY CESTUI QUE TRUST TO TRUSTEE—DOMINION PARTED WITH—REVOCATION AT WILL.

1. A, in his lifetime, purchased a share in a ship, and B took the bill of sale to hold the same in trust for A, taking B.'s bond. A afterwards promised B that he should have the share at his death. A received the profits of the share, and afterwards in writing directed the trust to be conveyed to C, and died. C assigned to the executors of A, who brought a bill against B. for the share. When the respondent offered parol evidence to show a declaration of gift of the trust property to him, to take effect at the death of cestui que use, *held* inadmissible to contradict the written declaration of trust. Semble, if made at same time.

2. Evidence of a parol gift made after the declaration of trust rebutted by proof that the cestui que use continued to take the profits of the share.

3. To make an absolute gift inter vivos, the owner must part with his dominion over the property.

4. A parol promise to the trustee that he should have the share after the death of the cestui que use, is not an absolute gift, and is revocable at pleasure.

[Cited in Smith v. Dorsey, 38 Ind. 457.]

5. Nor can an action be supported on it, if afterwards the cestui que use makes a new disposition of the same. Here A has made a new disposition in writing of the trust, and thereby has revoked the promise set up by respondent.

This was a bill in equity brought to enforce a conveyance to the plaintiff [John C. Lee] of one-sixteenth of a vessel called the

[1] [Reported by Charles L. Woodbury, Esq., and George Minot, Esq.]

Philip Tabb, and to account for the profits received from it. The complainant claimed title to this extent in the vessel in consequence of its having been bought and paid for by Joseph Lee, on the 24th of October, 1832, and the said Joseph dying in 1845, John Whipple, his administrator, having assigned the above share of Joseph to the complainant. On the contrary, the respondent [Henry H. Luther] set up a title in his answer, to this share of one-sixteenth, on the ground that when Joseph Lee purchased it, he took a bill of sale, running to one John Luther, who afterwards was allowed to manage it in trust, paying over the proceeds to said Joseph, and that he made a verbal promise, this share should be Luther's at the death of said Joseph. In December, 1840, John Luther, becoming embarrassed, assigned this share to the respondent to hold it in trust under the agreement between Joseph Lee and John Luther, the former having died and made no other disposition of it. The complainant, in argument, denied any such verbal agreement, and set up, if there was one, that a different disposal of this property was made by said Joseph before his death in March 25th, 1845, ordering it to be transferred to Henry Lee, Jr., and that Henry directed it to be paid to the administrators of Joseph, who assigned it to the complainant. Some evidence was put into the case on both sides. On the part of the respondent, the conveyance of John Luther to the defendant showed that said John then claimed this share and the income of it after the death of Joseph. And the deposition of Mason Barney showed that Joseph Lee often informed him of his friendship for John Luther, and his intention that John should have all his interest in the whole ship Philip Tabb, and his design to give John considerable property. Stephen Johnson testified also to Joseph Lee's declaration, that he had meant to give him considerable property, but should now give him only his interest in the Philip Tabb. The complainant proved that Joseph, some time before his death, when indisposed, directed his share in the Philip Tabb to be transferred to Henry Lee, Jr., by a writing as follows: "S. P. Child & Co., agents for the Philip Tabb, whaleman, value received, please to transfer to Henry Lee, Jr., my share in the Philip Tabb now on a whaling voyage. Yours with regard, Joseph Lee." This was indorsed to the administrators of Joseph Lee, for his heirs, without consideration, under a belief by Henry Lee that such was Joseph's intent. The original bill of sale when the share was bought by Joseph was not put in, nor any proof who had held it since, or that he was sick when it was taken in the name of John Luther in 1832.

John Whipple, for complainant.
Mr. Bosworth, for respondent.

WOODBURY, Circuit Justice. The original transaction as to this share of one-sixteenth of the whole ship Philip Tabb, the title to which is now in controversy, was very loose. If Joseph Lee in 1832, when purchasing this share, intended then to make an absolute gift of it to John Luther, to take effect at the death of Joseph, it would have been very easy to have said so in some writing directly from him to Luther. It might have been done, also, by the bill of sale of the share which was taken in the name of John Luther. If Joseph had caused it to be stated as a gift on the face of the bill, and delivered it, and if the other evidence was that the parties intended by this a gift, it would be tantamount to a bill of sale, first to Joseph, and then by him to John Luther. But neither of these was done. On the contrary, it is admitted in the answer, that by inserting John Luther's name as vendee in the bill, Joseph did not intend to make a gift in fee in presenti, or one absolutely, but both parties say it was at first to be held in trust by Luther for Joseph. Proceeding, then, as we must, to consider it a trust, if this writing had been produced, (and it is said in argument to be in John Luther's possession,) and had it contained an expression that the share was to be held in trust, it is very doubtful whether the parol evidence offered here to show it was to be a gift on Joseph's death, is competent. Such evidence would directly contradict the writing as to a trust, if it showed a parol agreement to have the share go as a gift to Luther on the death of Joseph. If made at the same time with the bill of sale, it is in that view hardly admissible. But if made afterwards, and was then a subsequent parol gift of this share in the vessel absolute or unconditional, it ought to be proved with more distinctness as to time and circumstances. There is some evidence from which such a gift might be inferred, though it is not very strong, and it is rebutted in some degree, that such a gift had ever been really made, or anything more than contemplated in future; for Joseph continued to take the earnings of the share, and actually disposed of it, or ordered it to be transferred to a different person before his death.

The real truth of the transaction, then, probably was that when Joseph bought this share, by taking the conveyance in John Luther's name, and by subsequently saying he intended to give it to him, his design was to make such a gift thereafter, but not then, and by continuing to take the income from it he meant not to perfect the gift till he might be pleased to do it soon before his death. Both parties, also, considered it not as a gift then, but a trust, on some terms not very clear. It is so admitted in the answer, and in the deed by John to the respondent it is so described expressly. But for this, as before remarked, the title

standing in Luther's name might be considered sufficient evidence of a gift then intended inter vivos, and the delivery of the vessel or share into his charge might be deemed a delivery of possession under the gift, if no other purpose had been expressed and acted on. But now it must be regarded as only evidence of a resulting trust in favor of Joseph, who paid the consideration, and not regarded as proof it was a present gift, or even to become one before his death, unless he did not conclude to transfer the trust or share to some other person, but let the property when he did become the trustee. All the acts of the parties look to such an understanding. In this view it was valid as a trust in form, at the time. But it was not valid as an absolute gift at the time, because the possession was not given to John Luther of this share, as an absolute donee. He was not allowed to use it so, or so to deal with its income.

The delivery or possession was diverso intuitu, and we think not as an absolute gift. To make such a gift good, the donor must at least part with dominion over it. 1 Nott & McC. 237. That was not done here. Whether the subsequent agreement or promise by Joseph to leave it after his death to Luther, could be a good gift inter vivos, is very questionable, for the want of a delivery to carry into effect such a promise. Grattan v. Appleton [Case No. 5,707]; 2 Johns. 52; 7 Johns. 26; 10 Johns. 293; 4 Dane, Abr. 122; 6 N. H. 388. Much more is it questionable, when the promise, if existing and clear, was afterwards attempted to be rescinded by transferring the share to Henry Lee, and was never carried into effect by any new act, or writing, or will. It would, then, as a promise only, be revocable, and be incomplete till something more was done perfecting it. 7 Johns. 26.

In this view, too, the matter is not helped by calling it a donatio causa mortis, for that, likewise, requires a delivery. 4 Dane, Abr. 123; 18 Johns. 145. It requires, also, sickness when the gift is made, which did not exist here. in 1832, when the bill of sale was taken in the name of John Luther. 1 Bligh (N. S.) 530; 2 Ves. Jr. 121; 3 P. Wms. 357; 4 Brown, Ch. 290. Nor did the bill of sale to John amount to a will or legacy, though it might have been sufficient in most cases to pass such a title or share in a vessel, as a gift inter vivos (4 Dane, Abr. "Gift," 122, 123), if the parties here had not both conceded it was meant, when done, to create a trust, and not to be evidence of an outright gift, and had not allowed some control to remain in Joseph, as cestui que trust, and entitled to and receiving the profits. But besides these difficulties in considering the original transaction anything except a trust, and if a trust at that time still one, and still liable to be enforced in favor of the administrators of the cestui que trust, or their assignee, and beside, the difficulty in supposing the trust,

then or since, by any act of Joseph, converted into a gift to John Luther, the evidence for the complainant and the conduct of Joseph prove rather the reverse. The case was considered a mere promise or mere intent to extinguish the trust at his death and turn it into a gift, if his regard to John Luther should continue to be such as to prevent him from changing that intent. But he did change it clearly.

Finding that Luther had afterwards failed in business in 1840 and assigned the trust and trust property to the respondent, and had conducted so as on the proof not to meet with his entire approbation, and is stated to have taken the benefit of the bankrupt law, while indebted largely to Joseph, and paying nothing, and Joseph having other persons relations, and near him, when becoming indisposed, he seems to have determined at last to give his property elsewhere. He resolved, not only to refrain from giving to Luther much of his estate, as once contemplated, but to withdraw this share from him and transfer it to another person. Under all these changed circumstances such a course was natural. The writing in the case in March, 1845. to Henry Lee, which is evidence of this, was an order to convey the vessel to him and not Luther. The words used apply, also, to the vessel itself, rather than the mere income of any voyage. No income appears to have been then due for it to cover. The vessel was abroad, and he therefore directs to be transferred to Henry Lee his share in the Philip Tabb, and does not convey to him or order to be transferred to him his interest in the income of any particular voyage. To give it effect, also, as a transfer, and not a mere gift, he admits value received, though Henry Lee, by his testimony, considered it rather an order for a conveyance to him with a view to restore the title for the benefit of the heirs, rather than a gift to Henry Lee. It may be remarked as to this writing, as well as the bill of sale to John Luther, and the parol promise to make a gift of the share to him, if properly proved;—neither, perhaps, could be enforced as executory promises to make gifts or legacies at some future time. No legal right or title is probably created by a mere promise to make a gift. 7 Johns. 26; 4 Dane, Abr. 127. Such a promise is not actionable. 6 N. H. 390; 2 Barn. & Ald. 551; 10 Johns. 293; 2 Johns. 52. Even a note promising to give money, though delivered, but not actually paying over, on delivering, the money itself, has been held not to be a good gift, nor the note recoverable by the promisee. Copp v. Sawyer, 6 N. H. 388; Holliday v. Atkinson, 5 Barn. & C. 501; Fink v. Cox, 18 Johns. 145.

The following case may seem to conflict with the above, holding a promissory note, to be delivered after the promisor's death, good, if duly delivered: Bowers v. Hurd, 10 Mass. 427; 2 Dane, Abr. 257. But I do not decide on these cases of promissory notes.

Naked promises to make legacies are clearly voidable as such, and this was the case of any promise to make a gift to John Luther. In respect to the written order to Henry Lee, he did not try to enforce it as a promise of any legacy or gift, but merely as a written declaration of a new trust in relation to this share. He could have received the transfer of the share under it, and it would have been a valid conveyance. But this being refused by the respondent, Henry Lee assigned it to the administrator of Joseph for his heirs, and he to the plaintiff. This passed his interest, and entitled the plaintiff to have the share. It showed, at least, a declaration by Joseph of the trust as to the share in favor of another person than John Luther, and in writing. It showed a design before his death that the share was not to be Luther's after the date of this writing, and after the death of Joseph, whatever may have been his previous views. Joseph, doubtless, had as much right to make a new declaration of a trust as one has to make a new devise or will before his decease. Luther had paid nothing for the share, bought nothing, had been given nothing outright, not even the income. All agree it was meant, at first, to be only a trust, and if a gift, till his death it stood revocable. All resulting trusts, as this was in law, may, also, at any time be conveyed to any other person than the grantee, if cestui que trust pleases. Wms. Ex'rs, 505. Indeed, the conveyance to the respondent by Luther contains some matter indicating that no interest then existed in John, or he must have had a design to defraud creditors by means of it. If John then possessed any interest in presenti, that could be sold, and it should have passed to his creditors. So as to his bankruptcy, and not accounting for this property: if he had any interest in it left then, it should have been assigned to his creditors. The proof on these last matters comes out or rests more in concessions in the arguments than in other evidence though the acts of John in these respects can only be justified on this hypothesis, and thus help to sustain it: that he himself then supposed he had no present interest in the share beyond that of a naked trustee.

It is objected further, that this order of transfer to Henry Lee was not directed to John Luther or Henry Luther in whose name the title stood, nor in correct form to the agent of the ship. But this is of little consequence, as it is proved what it is meant for; and enough is contained in it to show a design that the trust should operate in favor of Henry Lee, and the share transferred to him, rather than remain longer nominally in the name of John Luther, or in the hands of others, whoever they might be. It was the share in the vessel they were looking to, rather than the name of him who might have the technical trust over it at that moment.

The respondent admits in argument, and admitted in his bond to John Luther, that he was to convey to Joseph the share whenever desired. Now is not this writing to Henry Lee such a desire or wish expressed by Joseph? Is it not a conveyance or transfer requested to be made to his agent or assignee, and thus in law and equity the same as if to himself? The only objection in that view would be its address to the supposed managers of the ship, rather than to John or Henry Luther. But no one can doubt it was intended as a request to have this share conveyed to Henry Lee at his request, whoever might possess the technical authority to do it, and this is very clear on the explanatory evidence which is consistent with the writing, and therefore competent. Heckscher v. Binney [Case No. 6,316]. Under all the facts and circumstances, then, it is impossible, on what is before us, without further matter in evidence, to hold that the transaction with John Luther can be treated as an absolute gift, in presenti, or one to be completed by a certain event, and not open in the meantime to change or revocation by the donor, and not in the meantime being under his dominion and control. And if being under his control till death, no doubt exists that he ordered it to be transferred to another person than John Luther, and hence that John Luther is not entitled to it. The executor represented here both that other person and the heirs. He assigned the share to the plaintiff, and the latter is therefore entitled to the share and its income not before accounted for. The decree must be to account for the income of the share since in possession of the respondent, and to convey the share itself to the complainant, if the vessel remains unsold and not lost; but in either of these events to pay over his share in her value when sold, or in the insurance if lost, and interest since.